FOUNTAIN SPRING PARK COMPANY, Respondent, vs. ROBERTS and another, imp., Appellants.

*January 29 — February 18, 1896.*

*Corporations: Fraud of promoters: Liability of third persons aiding therein: Conspiracy.*

1. The promoters of a corporation are accountable to it for any profits which they may receive from a violation of their duty as such.

2. Where the promoters of a corporation organized to purchase a certain tract of land, by false representations as to the price to be paid therefor, obtained from the corporation for themselves a sum of money in excess of the price actually paid, other persons who, by agreement with such promoters and with knowledge of the facts, aided them in carrying out the scheme and received a portion of the profits thereof, are equally liable with such promoters to the defrauded corporation, even though they had no dealings directly with it or its members, and occupied no fiduciary relation, strictly so called, to them, and did not personally know that any misrepresentations were made.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

The complaint in this action, after appropriate formal allegations, sets forth, in effect, that about April or May, 1891, defendants Carrick and Willis formed a plan to promote the organization of plaintiff corporation, for the ostensible purpose of purchasing a certain tract of land and selling the same at a profit, but in fact for the purpose of defrauding such persons as might become members of such corporation and such corporation; that one Weber owned a land contract between him and Wells & Upham, the owners of the land which it was proposed to purchase, under which Weber had the right to become the purchaser thereof for the sum of $12,750, of which $6,000 consisted of a mortgage on the property, leaving, as the requisite payment to secure title to the premises under such contract, the sum of $6,750; that defendants *Russell* and *Roberts*, with knowledge of the fraudulent purpose of Carrick and Willis, entered into an agreement to assist them in carrying out the scheme, in consideration of receiving for their services a portion of the profits; that; for the purpose of inducing others to become stockholders in the proposed corporation, Carrick and Willis each took stock to the amount of $950, and then procured subscriptions for the balance of the capital stock, being $16,000, including their own subscriptions, by representing that the land was to cost $23,000 and was cheap at that price; that the persons who so subscribed for stock, relying upon such representations, paid in full for their stock and took part in organizing the company; that all the money paid in was turned over to Carrick and Willis to enable them to secure the land at the price named; that, about the time Carrick and Willis were circulating the subscription paper and obtaining signatures thereto, *Russell* and *Roberts*, in accordance with their agreement with the former, and in furtherance of the fraudulent scheme to defraud the corporation, purchased the interest of Weber in the land contract for the sum of $600, and caused the same to be assigned to *Russell*, and held subject to the order of the conspirators, Car-

rick and Willis; that shortly thereafter the latter paid *Russell* and *Roberts* $2,000 out of the money paid in by the stockholders; that the title to the land was finally perfected in the corporation by the co-operation of all the defendants, each acting to carry out the general purpose of defrauding the corporation for their benefit; that the title was so perfected, subject to incumbrances amounting to $7,000, by the actual expenditure of $5,412.73; while it was made to appear to the corporation that the sum of $16,000 cash had been paid, making, with the incumbrances, the full sum of $23,000; that the sum of $10,587.27 was received by defendants Carrick and Willis, from the corporation, over and above the amount which they actually expended in obtaining the land, which sum was unlawfully converted to their own use; that of this amount Carrick and Willis kept the sum of $8,525, and turned over to *Roberts* and *Russell* $2,062.27, which included a repayment to them of the $600 they paid to Weber. The entire history of the transaction is set forth in the complaint in detail, and judgment is demanded against the defendants for the amount of money which they retained as aforesaid.

Defendants *Roberts* and *Russell* interposed a general demurrer to the complaint, which was overruled by the court, and from the order entered upon such ruling this appeal was taken.

For the appellants there was a brief by *P. G. Lewis*, and oral argument by *A. B. May.*

For the respondent there was a brief by *Robinson & Geiger*, and oral argument by *F. A. Geiger.*

MARSHALL, J. The law is well settled that the promoters of a corporation occupy such relation to it that they cannot legally take any advantage over other members of such corporation, and that they are accountable to it for any profits which they may, by a violation of duty in this regard, receive. *Chandler v. Bacon*, 30 Fed. Rep. 538; *Pittsburg M.*

*Co. v. Spooner,* 74 Wis. 307; *Phosphate Sewage Co. v. Hart-mont,* 5 Ch. Div. 394; *Emma S. M. Co. v. Grant,* 11 Ch. Div. 918; *Short v. Stevenson,* 63 Pa. St. 95; *Densmore Oil Co. v. Densmore,* 64 Pa. St. 43; *McElhenny's Appeal,* 61 Pa. St. 188; 1 Morawetz, Priv. Corp. § 291; *In re British Seamless Paper Box Co.* 17 Ch. Div. 471. In *Pittsburg M. Co. v. Spooner, supra,*— a case precisely like this, in respect to defendants Carrick and Willis,— the law pertaining to the subject was most exhaustively discussed. Mr. Justice TAYLOR there stated the conclusion reached, as follows: "It being shown that the defendants formed the company for the purpose of purchasing this option, and having induced the present stockholders to furnish $90,000 of their money to make the purchase under the false impression, created by the defendants, that the defendants would be compelled to pay that amount for the purchase price, and the defendants having afterwards, as officers and agents of the company, purchased for the company such option, and paid themselves $70,000 more than they knew they could purchase it for, and $70,000 more than they in fact paid for the same, it seems to me there can be no doubt of their liability to refund to the corporation the $70,000 so obtained."

It being conceded, as it must be, that there is a good cause of action stated in the complaint against Carrick and Willis, the actual promoters of the enterprise and the persons who made the false representations and directly received the fruits of the fraudulent transaction, the question is presented on this appeal of whether *Roberts* and *Russell,* whom they employed to assist them in perpetrating the fraud, for a portion of the profits, and who, with knowledge of the facts, aided them in the scheme, are also liable to the corporation. It is not alleged that they had any dealings directly with the plaintiff or its members, or occupied any fiduciary relation, strictly so called, to them, or that they made any misrepresentations to the stockholders, or personally knew that any were made. To support the contention that they are

not liable on the facts stated, counsel for appellants cite
*Densmore Oil Co. v. Densmore*, and *McElhenny's Appeal*,
*supra*, but an examination of those cases fails to disclose
wherein they are applicable to the facts alleged in the com-
plaint. Here it is distinctly alleged that Carrick and Willis
entered into an agreement with appellants whereby the for-
mer were to promote the organization of the corporation
and directly procure it to take the property at $23,000, and
appellants agreed, in consideration of a part of the profits,
to aid in carrying out the scheme which resulted in defraud-
ing the plaintiff out of $10,587.27; that appellants carried
out their part of the agreement, and actually received a
portion of the fruits of the fraudulent transaction, with
knowledge of the facts. The principle of law that, where
several persons combine to carry out a fraudulent conspiracy
to cheat another, each and all of such persons are liable to
the defrauded party, without reference to the amount of
the fruits of the fraudulent transaction he obtains or the
degree of his activity in the scheme, is too well settled to
admit of discussion or to need any citation of authority in
support of it. It is on that principle that defendants *Rob-
erts* and *Russell* are charged in this case, and the allegations
of the complaint in that regard, as appears from the state-
ment of facts, make out a conspiracy to defraud, entered
into and carried out by all the defendants; hence all are
equally liable, and the complaint states a good cause of ac-
tion as to each.

It follows from the foregoing that the demurrer to the
complaint was properly overruled.

*By the Court.*— The order of the circuit court for Milwau-
kee county is affirmed.

The duties and liabilities of promoters to a corporation and its mem-
bers are reviewed in the annotation to *Yale Gas Stove Co. v. Wilcox* (64
Conn. 101) in 25 L. R. A. 90.— REP.