ALFRED MCKINLEY v. REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, WILLIAM H. SKINNER, BETTY S. BARTEAU, JAMES M. ORGAN, AS MEMBERS OF AND AS CONSTITUTING THE REVIEW BOARD AND QUALITY MOTEL.

[No. 1171A239. Filed December 11, 1972. Rehearing denied January 15, 1973. Transfer denied October 19, 1973.]

*John T. Manning, Ronald E. Elberger,* Legal Services Organization of Indianapolis, Inc., of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

WHITE, J.—This is an appeal from a decision of the Reveiw Board affirming a referee's denial of unemployment compensation. We affirm.

We previously overruled a motion to dismiss (see 283 N.E.2d 395, 31 Ind. Dec. 145) and the appeal is now before us on its merits.

The appellant-employee's claim for unemployment compensation was denied without hearing by a deputy on the basis of the employer's response alleging that the employee had been caught gambling on the premises. The employee requested a hearing before a referee at which hearing the employer appeared by a bookkeeper and without counsel. The appellant appeared in person and without counsel. No evidence was elicited to sustain the gambling charge but appellant was nevertheless denied compensation. The basis of the denial was his answers to the following questions asked him by the referee:

"Q. Mr. McKinley, have you had any other work since this employer let you go?
A. No sir.
Q. Have you looked anywhere else?
A. Yes sir.
Q. About how many places, please?
A. I go down there and they don't have anything.
Q. The Employment office?
A. Yes.
Q. Have you contacted any employers yourself directly?
A. Athletic Club where I used to work.
Q. Any place else where you have put in applications for work?
A. No sir."

The referee held, *inter alia,* that

"[O]ne employer contact in three and one-half months hardly shows an independent effort to secure work on claimant's own initiative, which could reasonably be calculated to result in claimant's being employed elsewhere. Claimant is unavailable for work within the meaning of Section 1403 of the Act[1] beginning April 8, 1971, and he continues to be as of the date of the Referee's hearing."

The employee's present counsel then prepared and filed an appeal to The Review Board of the Employment Security Division alleging:

"Claimant has contacted many potential employers in an independent effort to secure work which claimant had no

---

1. § 1403 of the Act is Ind. Ann. Stat. § 52-1538b (Burns Supp. 1972) which reads in pertinent part: "An unemployed individual shall be eligible to receive benefits with respect to any week only if he is physically and mentally able to work, is available for work, and is found by the division to be making an effort to secure work: Provided, That such 'effort to secure work' shall be defined by the board through rule or regulation which shall take into consideration whether such individual has a reasonable assurance of re-employment and, if so, the length of the prospective period of unemployment: . . . ." The Board's Regulation 826, as last amended September 15, 1971 reads in part:

"(52-1538a)-3. Claimant's 'effort to secure work.'—The term 'effort to secure work,' as herein defined, shall require a claimant to show that he has in addition to registering for work pursuant to IC 1971, 22-4-14-2 [Burns' Stat., § 52-1538a] of the Indiana Employment Security Act, followed a course of action which, with respect to individuals in the same or similar circumstances as the claimant, ordinarily results in the securing of suitable work, considering the customary methods of securing work in occupations which are suitable for the claimant and the current condition of the labor market.

"A claimant shall be ineligible for unemployment compensation benefits for any period for which the division finds that he has failed to make 'effort to secure work.' The facts and circumstances in each case shall be considered in determining whether 'effort to secure work' has been made. Subject to the foregoing, applicable actions of the following kind will be considered 'effort to secure work' if found by the division to constitute a reasonable means of securing work by the claimant, under the facts and circumstances of his particular situation:

a. Registering with the claimant's union hiring or placement facility.

b. Registering with a placement facility of the claimant's professional organization.

c. Making application with such employers as may reasonably be expected to have openings suitable to the claimant.
* * *"

opportunity to introduce at the hearing before the referee for this point was not in dispute and not known as necessary to be introduced by claimant at the hearing before the referee. Please see attached Form 666 for further details."

The "attached Form 666" is an application for leave to introduce additional evidence before the Review Board. The Form 666 alleges:

"Claimant not being versed in the law nor the specific statute, Sec. 1403 (a) of the Indiana Employment Security Act was unaware that other information beside the point in issue on appeal being discharged for misconduct in connection with work was necessary in order to receive his benefits. Claimant was under pressure at the hearing and was not accompanied by legal counsel or anyone familiar with the proceedings. The new evidence to be presented by oral evidence includes but is not conclusive of claimant's independent search for work at the following places:
"Marott Hotel
"Johnson Chevrolet Co., Inc.
"Princeton Hotel."

The only witness listed on the application "who will testify to the above facts" is the employee himself.

The Review Board denied the application to produce additional evidence, stating "there was no showing that such evidence was newly discovered or unavailable at the time of the referee hearing."

The Board found (in addition to the unemployment and the filing of the claim)

"that claimant became unemployed on or about April 13, 1971, and filed an initial claim for benefits on April 19, 1971.
"It further finds that from the date of filing his claim for benefits to the date of the referee hearing, August 9, 1971, claimant, other than registering at the Division's local employment office, made only one employer contact for work.
"The Review Board concludes that claimant's one employer contact for work during an approximate 3½-month period fails to convince the Board that he was making an independent, sincere effort to secure work."

The referee's decision was affirmed.

Appellant contends:

1. That he was denied due process of law in that he was not informed that he had a right to have counsel at the referee hearing or that any issue, other than whether he was fired for gambling on the employer's premises would be considered at the referee hearing.

2. That it was error for the Review Board to deny leave to introduce further evidence.

3. That he did not receive a fair hearing.

4. That there was insufficient evidence to sustain the finding that he failed to make a sincere effort to obtain employment.

Pursuant to Appellate Rule 8.3(A)(8) appellant's brief states in its conclusion the "precise relief sought" in the appellate court as follows:

". . . that the decision of the Review Board denying him unemployment insurance be reversed, or that the cause be remanded to the Review Board for the making of a complete record on the issue of availability, with specific instructions to allow the claimant-appellant to present whatever further evidence he wishes on this point."

The underlying rationale of that statement of relief sought is that the purpose and function of our review of the Review Board's decision is the correction of errors of law, if any, *committed by the Review Board.*[2] Correction of errors (of fact as well as law), if any, committed

---

2. The only "appeal" to this court from a decision within the Employment Security Division on a disputed claim for compensation is Ind. Ann. Stat. § 52-1542k (Burns 1964 Repl.) which, in pertinent part, reads:

"Any decision of the review board shall be conclusive and binding as to all questions of fact. Either party to the dispute, the board or the director may, within thirty [30] days after notice of intention to appeal as herein provided, appeal the decision to the Appellate Court for errors of law under the same terms and conditions as govern appeals in ordinary civil actions.

\* \* \*

"The appellant shall attach to said transcript an assignment of errors. An assignment of errors that the decision of the review board

by the referee is the Board's function, not ours.[3] Hence appellant's first contention (that he was denied due process by the referee) is not an issue here except to the extent that it may be involved in appellant's contentions of error by the Review Board. The appeal to the Review Board was prepared and presented by competent counsel and our consideration and concern is limited to whether the Board erred in its rulings on what was presented to it.

Whether it was error for the Review Board to deny appellant leave to introduce further evidence depends on the sufficiency of the petition for such leave, i.e., did it show such "good cause" that it was error to deny it?

Section 1806 of the Employment Security Act (Ind. Ann. Stat. § 52-1542e (Burns 1964 Repl.), IC 1971, 22-4-17-6) provides, *inter alia*, that "[t]he manner in which disputed claims shall be presented and the conduct of hearings and appeals shall be in accordance with regulations prescribed by the board for determining the rights of the parties, whether or not such regulations conform to

is contrary to law, shall be sufficient to present both the sufficiency of the facts found to sustain the decision, and the sufficiency of the evidence to sustain the findings of facts.

\* \* \*"

There is no provision for assigning as error any ruling or decision of the referee.

3. Pursuant to authority of Ind. Ann. Stat. § 52-1544 (Burns 1964 Repl.) the Indiana Employment Security Board has adopted the following rule:

"(52-1542e)-3. Appeals to review board.—Within fifteen [15] days after the date of notification or mailing of the decision of the referee, either party may appeal to the review board. Such appeal shall be filed at the claims-holding local office or administrative office, on Form 651, 'Request for Appeal to Review Board.' When accepted by the board, or its authorized representative, the receipt of any document that indicates on its face a desire to appeal and contains the information requested by the above-mentioned Form 651 shall be treated as being in compliance with this regulation. The review board may grant or deny such a request for the hearing, and shall immediately notify all parties in writing. If such a hearing is granted, the review board shall immediately set a date for hearing not earlier than five [5] days from the date of the request for hearing. [Indiana Employment Secur. Bd., Reg. 1007, adopted Nov. 28, 1945, filed Dec. 13, 1945; as last amended Oct. 21, 1966, filed Dec. 6, 1966.]"

common law or statutory rules of evidence or other technical rules of procedure." Indiana Employment Security Board Regulation 1008 provides, *inter alia:*

> "Each hearing before the review board shall be confined to the evidence submitted before the referee unless the same is an original hearing. Provided, however, the review board may hear or procure additional evidence upon its own motion, or upon written application of either party, and *for good cause shown, together with* a showing of *good reason why* such additional evidence was *not* procured and *introduced at the hearing* before the referee whose decision forms the basis of the appeal." (Our emphasis.)

Applied to the facts in this case, the requirement for "a showing of good reason why such additional evidence was not . . . introduced at the hearing" means simply a good answer to this question: "Why did appellant say, 'no sir' to the referee when asked 'Any place else where you have put in application for work?'" The answer offered says merely that he was "under pressure," unrepresented by counsel, ignorant of the law and of the issues before the referee. It wholly fails to explain how any of these conditions caused the appellant to make an untrue answer or how any change in any of them would have improved his ability to make a truthful answer to that simple question.[4]

---

4. Even in the many pages of appellant's brief devoted to excoriation of the referee for inquiring concerning appellant's efforts to secure work there is no clear cut assertion that appellant did not understand the question or that he had forgotten the answer. Both possibilities are merely suggested, as in this amazing excerpt from the argument on pages 15 and 16 of the brief:

"The referee was no neutral arbiter, but an active antagonist to the interests of Alfred McKinley. It is well to note that Alfred McKinley was well able to respond to the employer's claim that he had been gambling. He fell into no traps there. His memory was keen because he knew what was coming. Then he fell into the snare of the unknown question, which he had not pondered. It would be extraordinary if his answer was complete, even intelligent. The quick shift from 'looking' to 'applying' may have confounded the employee, too. It is almost as if the referee had resolved to deny Alfred McKinley's unemployment insurance by whatever means, particularly by asking him unexpected questions testing his memory of months past, requiring momentary answers. Albert [sic] McKinley had no way of knowing that questions regarding his efforts to find employment would be con-

There was no abuse of discretion in the Board's refusal to give the appellant an opportunity to change his answer.

As was pointed out in *Ladd* v. *Review Board* (1971), 150 Ind. App. 632, 276 N.E.2d 871, no question is presented for our consideration by appellant's contention that "[t]here was not sufficient evidence to support the determination . . . that the employee was not available for work." We, therefore, as in *Ladd,* treat the contention as an argument that the decision is contrary to law. On evidence more favorable to the employee than that before us here it was held in *Ladd:*

> "Since we cannot say that from the evidence, reasonable men would be bound to reach a conclusion contrary to that of the Review Board, we cannot hold that the decision of the Board is contrary to law. In our opinion the record of this case does not show conclusively that the appellant was making an honest and conscientious effort to obtain suitable work during this period. Therefore, we may not disturb the decision of the Board. Poulsen v. Review Board (1953), 123 Ind. App. 297, 110 N.E.2d 746." (276 N.E.2d 871, 874).

No reversible error having been presented, the decision of the Review Board is

---

clusive in his case. He must have thought that he would be accused of gambling and he was ready to disprove that accusation. *It is impossible to know what Alfred McKinley would have answered if he had received notice before hearing.* Thus there is no way of knowing whether the records are full or correct, and no way of knowing if the decision of the Review Board is right. The employee's request to introduce additional evidence is significant, however, because it shows that he believes he is able to prove that he sought work at 3 places other than the 1 he mentioned under the pressure of the hearing." (Our emphasis.)

Our examination of the record convinces us the referee was merely performing his duty as prescribed by the Indiana Employment Security Board's regulation 1003 which, in part, provides:

"Any referee engaged in conducting such a hearing shall have the right to examine all witnesses and may require the parties to produce any available evidence he may deem necessary for proper determination of the case. Whether either party fails to appear or where either party is not represented by an attorney or duly authorized agent, it shall be the duty of the referee to examine such party's witnesses, and to cross-examine all witnesses of the other party, in order to insure complete presentation of the case."

Affirmed.

Buchanan, P.J., and Sullivan, J., concur.

NOTE.—Reported at 290 N.E.2d 108.

DISSENTING OPINION ON PETITION TO TRANSFER
TO THE SUPREME COURT

HUNTER, J.—I respectfully dissent from the denial of transfer in this cause. The petitioner, Alfred McKinley, filed for unemployment compensation after being discharged from his job as a night porter. The claim was denied without a hearing, based upon the employer's written statement that McKinley had been caught gambling on the business premises. Thereafter, McKinley requested and received a hearing before a Division Referee. At the hearing, neither petitioner nor the employer was represented by counsel, and no evidence was entered to support the gambling charge. However, the referee denied petitioner unemployment compensation because the referee found that McKinley had failed to make an independent effort to secure work. It appears that petitioner had one direct employer contact since his discharge. Through counsel, McKinley filed an application to introduce additional evidence in his appeal to the Review Board of the Employment Security Division. The petitioner offered to show that he had in fact sought employment at three additional places which evidence had not been introduced at the hearing before the referee. This application was denied on the grounds that the petitioner had failed to show that this evidence was newly discovered or unavailable at the time of the referee's hearing. The Review Board then affirmed the referee's decision and held that one employer contact during a 3½ month period failed to show an independent effort to secure work. The Court of Appeals affirmed. *McKinley* v. *Review Board* (1972), 154 Ind. App. 387, 290 N.E.2d 108.

Petitioner is here alleging that he was denied due course

of law in that he was given no notice of the issue upon which his claim was denied by the hearing referee. I agree.

Ind. Ann. Stat. § 52-1542 (e) (1964 Repl.) ; IC 1971, § 22-4-17-6 provides in pertinent part:

". . . That with respect to any hearing before a referee held pursuant to Section 1803 [Sec. 52-1542b] hereof, each party to such hearing shall be mailed a notice of such hearing at least five [5] days before the date of the hearing, specifying the place and time of the hearing, *and identifying the issues to be decided;* [emphasis supplied] . . . ."

The above statute represents an implementation of the fundamental safeguards of due process. The legislature has seen fit to statutorily insure that a person seeking redress for an alleged wrongful withholding of unemployment benefits is properly cognizant of the issues to be raised at his hearing. The statute encompasses the elementary notions of fairness which insure an impartial hearing. These protections become acutely paramount where, as in the case at bar, the applicant for unemployment compensation is not familiar with the rules concerning the hearing procedure nor is equipped to cope with an adversary situation. The right to be heard embraces the right to fair opportunity for preparation on *all* issues to be heard. In the instant case, McKinley knew only that he had been denied compensation for alleged gambling on the employer's premises. When this charge proved groundless, McKinley was met with an issue never raised before—one which he had no reason to know was to be considered. A fair interpretation of the statute in question leads to the inevitable conclusion that the legislature has expressed its intention to require specificity in identifying the issues to be raised at the division referee hearing. This expressed legislative intent was not followed in this case.

Furthermore, in view of the public policy considerations surrounding the awarding of unemployment compensation, of which the Review Board is indisputably aware, I find it im-

possible to judicially sanction the Review Board's denial of petitioner's application to introduce additional evidence.

NOTE.—Reported at 301 N.E.2d 845.